Shauck, J.
(dissenting).
The question considered assumes that the act of March 5, 1891 (88 O. L.,77), by which the legislature attempted to create the office of city commissioner of Akron is unconstitutional.
The substance of the indictment is that Gardner “unlawfully, fraudulently and corruptly did off el- and promise to one Joseph Hugill, he, the said Joseph Hugill, being then and there an officer of the city of Akron * * *. to-wit: a city commissioner of said city duly appointed, qualified and acting * * * a large sum of money,” etc.
The crime created by the statute under which the indictment was found is corruptly giving, promising or offering to an offer anything of value, etc.
Since there are no common law crimes in this state, we must look to the statutes for their exclusive definition. If it were not* averred in this indictment that Hugill is an officer, no one would question the correctness of the ruling below. *56 Notwithstanding that averment, the indictment is fatally defective if, in view of the provisions of the constitution and the statutes, the averment is, as a matter of law, false. Prom the assumption that the statute in question is unconstitutional it results that there is no such legal office as city commissioner of Akron. But the indictment avers that Hugill was acting as such commissioner; and the question presented is whether there can be a de facto incumbent of an office that has no legal existence. The decision of this question is required by the demurrer to the indictment, since if it should be answered in the negative, there is wanting an essential element of the crime defined by the statute.
There are well considered cases in which it is held that the parties to 'civil actions have become so related to the subject of an unconstitutional enactment that, upon principles of equity, they are estopped to assert its invalidity. But an element of a crime cannot be introduced or- established by estoppel.
There are also cases in which it is held that considerations of public policy will not permit one to question the legal existence or right composition of the court before which he is brought to trial. It is not of present importance that the authority of these eases is seriously impaired, for in this case the accused, admitting the existence, composition and jurisdiction of the court, challenges only the existence of the office whose existence is indispensable to the crime defined by the statute and charged in the indictment.
In numerous cases for reasons entirely consistent with the general rule, it is held that, the office being legally created, its incumbent is an officer de *57 facto, although, the statute providing for his appointment is unconstitutional. Such a case is ex parte Strang, 21 Ohio St., 610.
Recently by divided courts, and in some cases for reasons which obviously invited dissent, there have been holdings supposed to introduce exceptions to the established rule that there can be no defacto officer unless there is a legal office. They are cases of acts ineffectual to establish the office because of an insufficient legislative vote, the invalidity of the acts not appearing from the repugnancy of their provisions to those of the constitution, but alone from the legislative journals; and unconstitutional acts to increase the numerical membership of official boards that had been legally constituted. All such holdings disappear from the present view when it is remembered that the Akron act attempted to create an office which did not previously exist, and that the act was ineffectual because it involved the exercise ’ of power which was withheld from the general assembly by the express terms of the constitution.
The caséis therefore within the doctrine of Norton v. Shelby County, 118 U. S., 425, where itisheld that there can be no officer de facto unless there is a legal office. That case was decided in 1886. The report shows that it was decided after the most careful analysis of previous cases and full consideration of the legal reasons involved in- its determination. An examination of the numerous cases cited by counsel in that case will vindicate the language of Mr. Justice Field in the opinion: “Numerous cases are cited in which expressions are used which, read apart from the facts of the cases, seemingly give support to the position of counsel; but, when read in connection with the *58 facts, they will be seen to apply only to the invalidity, irregularity or unconstitutionality of the mode by which the party was appointed or elected to a legally existing office. None of them sanctions the doctrine that there can be a de facto office under a constitutional government, and that the acts of the incumbent are entitled to consideration as valid acts of a defacto office. Where an office exists under the law, it matters not how the appointment of the incumbent is made, so far as the validity of his acts is concerned. It is enoug’h that he is clothed with the insignia of the office, and exercises its powers and functions. As said by Mr. Justice Manning, of the supreme court of Michigan, in Carleton v. People, 10 Mich., 259: ‘Where there is no office there can be no de facto officer, for the reason that there can be none de jure.’'’’'
In that case the nothingness of an act which the legislature is denied the power to pass is comprehensively and accurately described: ‘ ‘An unconstitutional act is not a law; it confers no rig’hts ; it imposes no duties ; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed. ’ ’
This case is referred to by considerate writers as determining the law. Mechem on Public Officers, sections 324-7, and Dilion on Municipal Corporations section 276. This question is not affected by any local consideration, and a refusal' to follow Norton v. Shelby County, must imply that it was wrongly decided. That conclusion should not be hastily adopted with reference to a unanimous decision of a court so distinguished for learning and ability, even if it did not seem to be supported by satis factory reasons. But looking to the leg’al *59 considerations involved, it is difficult to see how any other conclusion could have been reached.
Every view of the substance of things of this character goes beyond the mere form of an act and considers the constitutional provisions and the power of the general assembly with reference to the subject. The constitution is not only a part, but the controlling part, of the law which all are presumed to know. It is implied, though not stated, in the view of the majority that courts possess more than judicial power. For, until they have power not only to declare the law, but to make it, their judgments can neither acid to nor detract from the virtue of a legislative act. If a judgment were rendered against Hugill in quo warranto, it would not be because of any defect in his appointment, but because there is no such office as that which he assumes to fill. The judgment would not create that condition. It would only declare a condition which previously existed because of the invalidity of the act. The characterization is admirable because of its accuracy: “The notion that there can be a 'defacto officer without a legally constituted office is a political solecism. ” This view is in accord with the doctrine of State ex rel. v. O'Brien, 47 Ohio St., 464.
May be the general assembly has power to make • it a .felony to attempt to bribe one assuming to exercise the imaginary duties of an office that does not exist, but such ease is not within the present statute. The right of an accused person to invoke the provisions of the constitution to shield him from unlawful punishment cannot be less clear than that so 'frequently exercised by citizens to protect their property from unlawful taxation.
*60 The misuse of words and phrases is effective to mislead. One who invokes the provisions of the fundamental law for his protection against acts in conflict with it is not subject to any of the doctrines of collateral attack. An unconstitutional act is not a statute. The law-making department authorizes no official acts which the constitution forbids it to authorize. An act of the general assembly in excess of its power is invested with no solemnity. Law making power that has been withheld has not been delegated. In a consideration which assumes that an act is unconstitutional there is no place for the presumption that it is constitutional.